UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

COREY L. MILLEDGE,

             Plaintiff,

v.                                  Case No. 3:20-cv-269-BJD-PDB

JEFFREY R. MCCLELLAN et al.,

             Defendants.

_____

## ORDER

### I. Status

Plaintiff, an inmate of the Florida penal system, is proceeding on an amended complaint (Doc. 17) against twenty-three individuals for conduct that occurred at Florida State Prison (FSP). Before the Court are the following motions to dismiss: Defendants Atteberry, Chambers, Chandronnet, Dean, Douglas, Hall, Halsey, Handley, Hanson, Honour, McClellan, Mitchell, Reddish, Warren, and Watson's (collectively, "Officer Defendants") (Doc. 100);[1] Defendant Danley's (Doc. 128); and Defendants Espino, Turbyfill, Wilkerson,

---

[1] The Officer Defendants do not identify Defendants Kelly or Hewitt-Watson in the introductory paragraph of their motion. Doc. 100 at 1. However, Defendants Kelly and Hewitt-Watson are represented by the Office of General Counsel, as are the other Officer Defendants. Additionally, in their motion, the Officer Defendants address claims asserted against Defendants Kelly and Hewitt-Watson. Thus, it appears the omission of Defendants Kelly's and Hewitt-Watson's names from the motion was an oversight.

and Ford's (collectively, "Medical Defendants") (Doc. 129). Plaintiff opposes the motions to dismiss (Docs. 112, 135, 139). Also before the Court is Plaintiff's motion for entry of default judgment against Defendant Robinson (Doc. 113).

In his amended complaint, Plaintiff sets forth fifteen counts based on discrete incidents that occurred at FSP between March 2018 and October 2019. Doc. 17 at 33-47. Primarily, Plaintiff alleges Defendant Warden Reddish and multiple officers retaliated against him over the span of more than one year because of a lawsuit Plaintiff filed against Warden Reddish. Id. at 15.

## II. Motion to Dismiss Standard

Under the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In ruling on such a motion, the court must accept the plaintiff's allegations as true, liberally construing those by a plaintiff proceeding pro se, but need not accept as true legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Though detailed factual allegations are not required, Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

### III. Motions to Dismiss

In their separate motions, Defendants assert Plaintiff failed to exhaust some of his claims, he improperly joins unrelated claims, and Plaintiff's amended complaint should be dismissed as frivolous. Doc. 100 at 4, 16, 18, 21; Doc. 128 at 6, 19; Doc. 129 at 2, 6.[2] Because exhaustion "is a matter in abatement," the Court addresses that threshold issue first. Bryant v. Rich, 530 F.3d 1368, 1375 (11th Cir. 2008).

### A. Exhaustion

The Prison Litigation Reform Act (PLRA) provides, "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant, 530 F.3d at 1374. See also Jones v. Bock, 549 U.S. 199, 211 (2007). While "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford v. Ngo, 548 U.S. 81, 101 (2006), "exhaustion is mandatory . . . and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823

---

[2] Additionally, Defendants Danley and the Medical Defendants note Plaintiff's amended complaint constitutes a "shotgun pleading" because he "incorporates all the facts into each count, even when they have no bearing to the separate claims." Doc. 128 at 6 n.3; Doc. 129 at 6 n.7. While true that Plaintiff incorporates all allegations into each successive count, the Court finds his separate claims and the factual allegations supporting each generally are discernible.

(11th Cir. 2017) (per curiam) (citing <u>Jones</u>, 549 U.S. at 211). Nevertheless, prisoners are not required to "specially plead or demonstrate exhaustion in their complaints." <u>Jones</u>, 549 U.S. at 216.

Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies. <u>Woodford</u>, 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" <u>Id.</u> Generally, to properly exhaust administrative remedies, a Florida prisoner must complete a three-step process, as fully set forth in the Florida Administrative Code, by first filing an informal grievance at the institution level, then a formal grievance at the institution level, and then an appeal to the Office of the Secretary of the Florida Department of Corrections (FDOC). <u>See</u> Fla. Admin. Code rr. 33-103.005 through 33-103.007. <u>See also</u> <u>Dimanche v. Brown</u>, 783 F.3d 1204, 1211 (11th Cir. 2015). However, under some circumstances, an inmate may bypass the informal or formal grievance steps and initiate the grievance process by filing a formal grievance at the institution or by filing a grievance directly with the Office of the Secretary. <u>See</u> Fla. Admin. Code rr. 33-103.005 through 33-103.007.

When confronted with an exhaustion defense, courts in the Eleventh Circuit employ a two-step analysis:

> First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust.

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015) (internal citations omitted) (citing Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008)). Because failure-to-exhaust is an affirmative defense, the defendant bears the burden. Turner, 541 F.3d at 1082.

### i.    Step One of the Exhaustion Analysis

Plaintiff alleges Defendant Warden Reddish threatened him on March 15, 2018, saying "I'm [going to] have my officers kill you or hurt you if you don[']t drop the lawsuit against me." Doc. 17 at 15. He alleges he thereafter was the victim of excessive force or was denied adequate medical care on the following occasions: June 5, 2018 (Defendants Warden Reddish and Assistant Warden McClellan allegedly ignored his pleas for protection from Defendant Dean); June 6, 2018 (Defendants Dean and Halsey allegedly beat him while Defendant Hanson was present); June 10, 2018 (Defendant Ford allegedly ignored him when he attempted to declare a medical emergency); June 13, 2018 (Defendant Hall allegedly sprayed him with chemical agents in

retaliation for his lawsuit against Warden Reddish); October 31, 2018 (Defendant Warden Reddish allegedly beat him while Defendants Chandronnet and Honour watched); June 27, 2019 (Defendant Danley (a nurse) allegedly threatened him and then, along with Defendant Atteberry, allegedly beat him while Defendant Kelly watched); July 2, 2019 (Defendants Atteberry, Hewitt-Watson, Chandronnet, Douglas, and Hall allegedly beat him while Defendants Handley, Honour, Chambers, Mitchell, and Warren watched); July 2, 2019 (Defendants Espino, Turbyfill, and Wilkerson allegedly denied him adequate medical care). Doc. 17 at 16-32.

In their separate motions, Defendants contend Plaintiff did not exhaust his administrative remedies with respect to some of the alleged incidents of excessive force or inadequate medical care. The Court will address the claims by date of incident.[3]

---

[3] One claim (Count XV) is not related to a single incident or event but rather is about all alleged incidents of excessive force against Plaintiff. Count XV is a claim against solely Defendant Warden Reddish in his supervisory capacity. Doc. 17 at 46. Plaintiff alleges Warden Reddish "ha[d] the duty to protect inmates," and was "aware of widespread abuse of inmates at [FSP] and failed to take corrective steps to stop it." Id. He further alleges Warden Reddish "had or maintained a custom or policy at [FSP]of the code of silence and allowing abuse toward inmates." Id. at 47. The Officer Defendants do not overtly or directly address Plaintiff's exhaustion efforts related to this claim. See generally Doc. 100. Additionally, Plaintiff exhausted his administrative remedies as to some of the underlying claims. As such, at this juncture, this claim may proceed.

### a. March 15, 2018: Count I against Defendant Warden Reddish (retaliation)

In Count I, Plaintiff alleges Defendant Warden Reddish threatened him on March 15, 2018, in retaliation for Plaintiff having filed a lawsuit against Warden Reddish. Id. at 15, 33. According to Plaintiff, the threat materialized into physical harm on multiple occasions. The Officer Defendants do not expressly address Plaintiff's exhaustion efforts as it relates to Count I; rather, they discuss Plaintiff's exhaustion efforts, or lack thereof, for discrete incidents of excessive force Plaintiff alleges he endured following the March 15, 2018 threat. Doc. 100 at 1-15. The Officer Defendants acknowledge Plaintiff exhausted his administrative remedies as to some of his excessive force claims. See id. at 12-13. Thus, to the extent some of Plaintiff's excessive force claims were exhausted, the Court finds Count I can proceed at this juncture.

### b. June 5, 2018: Count II against Defendants Warden Reddish and Assistant Warden McClellan (deliberate indifference to a serious risk of harm)

Plaintiff alleges he sought protection or transfer from Defendants Warden Reddish and Assistant Warden McClellan on June 5, 2018, because Defendant Dean had threatened him for having filed a lawsuit against Warden Reddish. Doc. 17 at 16. Plaintiff alleges Assistant Warden McClellan responded by saying, "You [are] an inmate[;] I will not help." Id. Plaintiff

asserts Defendants Reddish and McClellan did nothing to protect him, which "enabled [Defendant] Dean to physically assault [him]" the next day. Id. at 35.

The Officer Defendants represent Plaintiff did not file a grievance complaining that Defendants Warden Reddish and Assistant Warden McClellan refused to protect him from Defendant Dean's alleged attack. Doc. 100 at 11. Plaintiff concedes there is no such record. Doc. 112 at 8; Doc. 112-1 at 4-5. However, he claims to have submitted a grievance complaining about "everything that [he] stated or described in the amended complaint," but a prison official "destroyed [his] grievance." Doc. 112-1 at 4. Dismissal of Count II is not warranted under the first step of the exhaustion analysis because Plaintiff claims the grievance process was unavailable to him—an assertion the Court must credit at this step. See Turner, 541 F.3d at 1082.

### c. June 6, 2018: Count III against Defendant Dean (retaliation) & Count IV against Defendants Dean, Halsey, and Hanson (excessive force and failure to intervene)

Plaintiff alleges Defendants Dean and Halsey arrived at his cell front on June 6, 2018, and ordered him to strip-down for a search before going to see the nurse. Doc. 17 at 16. According to Plaintiff, Defendant Dean whispered to him, "I'm going to beat [you] every chance I get since [you] refused to drop the lawsuit against Warden Reddish." Id. After the strip search was concluded and Plaintiff got dressed, Defendant Halsey handcuffed him. Id. at 17. When

Plaintiff walked out of his cell, Defendants Dean and Halsey allegedly slammed him to the ground and then physically attacked him. Id. Plaintiff alleges Defendant Hanson was present. Id. at 17-18.

Plaintiff initiated the grievance process by submitting a formal grievance to the warden's office on June 6, 2018, complaining that Defendants Halsey and Dean removed him from his cell and then immediately attacked him while Defendant Hanson watched but did nothing to help. Doc. 100-2 at 7. Plaintiff's grievance was "approved from the standpoint that [his] allegation [was] reported." Id. at 5. This grievance and response demonstrate Plaintiff exhausted his remedies related to the June 6, 2018 incident alleged in his amended complaint. Thus, Counts III and IV are not due to be dismissed on exhaustion grounds.

### d. June 10, 2018: Count V against Defendant Ford (deliberate indifference to serious medical needs)[4]

In his amended complaint, Plaintiff alleges Defendant Ford (a nurse) ignored his request to declare a medical emergency on June 10, 2018. Doc. 17 at 19. The Medical Defendants acknowledge Plaintiff filed a formal grievance on June 21, 2018, complaining that Defendant Ford ignored him when he

---

[4] Plaintiff also names Defendant Robinson in this Count. Defendant Robinson has not responded to Plaintiff's amended complaint. See Clerk's Default (Doc. 106). As such, the Court's exhaustion analysis regarding Count V is limited to the claim against Defendant Ford.

attempted to declare a medical emergency on June <u>11</u>, 2018. Doc. 100-1 at 10 (emphasis added). However, the Medical Defendants note that the allegations in Plaintiff's June 21, 2018 grievance are about a different incident than the one raised in his amended complaint. Doc. 129 at 13.

In his response and supporting affidavit, Plaintiff concedes the June 21, 2018 grievance relates to a different incident than the one he raises in his amended complaint. Doc. 139 at 7-8; Doc. 139-1 at 2. Plaintiff claims he submitted a grievance about the June 10, 2018 incident, but the grievance was "not process[ed]" or was destroyed. Doc. 139-1 at 2-3. Given the factual dispute, the claim against Defendant Ford in Count V is not subject to dismissal at this step.

### e. June 13, 2018: Count VI against Defendant Hall (excessive force)

Plaintiff alleges Defendant Hall sprayed him with chemical agents three times on June 13, 2018. Doc. 17 at 20. He contends one spraying was justified but two were done "for no reason at all." <u>Id.</u> at 20-21. Plaintiff received a post-use-of-force medical assessment and was permitted to shower. <u>Id.</u> at 21. Defendants do not dispute Plaintiff exhausted his administrative remedies for this claim. Doc. 100 at 2-3, 15. Thus, Count VI is not due to be dismissed on exhaustion grounds.

10

**f. October 31, 2018: Count VII against Defendant Warden Reddish (retaliation and excessive force) & Count VIII against Defendants Warden Reddish, Chandronnet, and Honour (excessive force and failure to intervene)**

Plaintiff alleges that, on October 31, 2018, Defendant Warden Reddish punched him in the head and face while he was fully shackled and while Defendants Chandronnet and Honour watched. Doc. 17 at 22. Defendants contend Plaintiff "did not file any grievances" about this incident. Doc. 100 at 15. In response, Plaintiff says he placed grievances "in the locked grievance box to be processed," but they were not. Doc. 112 at 8; Doc. 112-1 at 5. Given the factual dispute, Counts VII and VIII are not subject to dismissal at step one of the exhaustion analysis.

**g. June 27, 2019: Count IX against Defendants Atteberry, Danley, and Kelly (excessive force and failure to intervene)**

Plaintiff alleges Defendants Atteberry and Danley "began punching [him]" while he was fully shackled and while Defendant Kelly "stood by watching." Doc. 17 at 23-24, 40-41. The Officer Defendants and Defendant Danley contend there is no record of Plaintiff having submitted a grievance regarding the June 27, 2019 incident. Doc. 100 at 15; Doc. 128 at 13. Plaintiff concedes there is no such record. Doc. 112 at 8; Doc. 135 at 6-7. See also Doc. 112-1 at 7-8. However, he says he placed grievances "in a locked grievance box to be processed," but they were not, presumably because they were destroyed.

Doc. 112 at 8 n.1; Doc. 112-1 at 7. Given the factual dispute, dismissal of Count

IX is not warranted at this step.

> **h. July 2, 2019: Count X against Defendant Warden Reddish (failure to protect); Count XI against Defendant Atteberry (retaliation); Count XII against Defendants Atteberry, Hewitt-Watson, Chandronnet, Douglas, Hall, Honour, Handley, Mitchell, Warren, and Chambers (excessive force and failure to intervene); and Count XIII against Defendants Espino, Turbyfill, and Wilkerson (deliberate indifference to serious medical needs)**

Plaintiff alleges that, on July 2, 2019, Defendant Atteberry threatened

to "beat his ***" if Plaintiff continued to pursue his lawsuit against Warden

Reddish. Doc. 17 at 26. Plaintiff alleges Defendant Atteberry "grabbed [him]

and then slammed [him] on the ground for no reason at all." Id. He alleges

Defendant Atteberry continued the attack when he was on the ground and fully

shackled. Id. at 27. After Defendant Atteberry assisted Plaintiff to his feet and

took him to a different room, Defendant Atteberry, Defendant Hewitt-Watson,

and Defendant Chandronnet allegedly punched Plaintiff in the head, face, and

the rest of his body. Id. Plaintiff contends Defendants Handley and Honour

watched. Id.

Plaintiff alleges that, after Defendants Handley and Honour left,

Defendant Atteberry continued the attack, knocking him unconscious. Id. at

28. When he regained consciousness, Defendants Douglas, Hall, Atteberry,

"and other prison officials took turns[] punching and kicking [him]" while

Defendants Hewitt-Watson, Chandronnet, Warren, Chambers, and others "stood by watching." Id. at 28-29. Plaintiff alleges Defendant Warden Reddish is liable for failing to protect him. Id. at 41-42.

Plaintiff alleges prison officials took him to the medical room for a post-use-of-force examination. Id. at 29. Plaintiff alleges Defendant Espino told him to "shut up" but stapled closed a wound on his forehead. Id. Plaintiff asserts Defendants Espino, Wilkerson, and Turbyfill failed to conduct an adequate examination because they did not "lift up [his] shirts nor pant legs to see if [he] had any injuries or bruise marks." Id. at 30. Plaintiff says he later discovered bruise marks on his chest, stomach, and back. Id.

The Officer Defendants do not dispute that Plaintiff exhausted his administrative remedies related to the allegations in Counts X, XI and XII. Doc. 100 at 15. Plaintiff submitted a grievance directly to the Office of the Secretary on July 9, 2019, complaining about the July 2, 2019 attack. Doc. 100 at 12. See also Doc. 100-1 at 3-5. His grievance was accepted but denied. Doc. 100-1 at 2. As such, Plaintiff exhausted his administrative remedies with respect to the claims raised in Counts X, XI, and XII.

The Medical Defendants, however, contend Plaintiff did not exhaust his deliberate indifference claims against Defendants Espino, Turbyfill, and Wilkerson (Count XIII). Doc. 129 at 15-16. They acknowledge Plaintiff

mentioned having received a cursory medical examination in his July 9, 2019 grievance but contend "that grievance was not related to the medical care provided . . . [but rather] it related to the use-of-force incident by corrections officers." Id. at 16. The Office of the Secretary did not return Plaintiff's grievance without action; the grievance was accepted but denied. Doc. 100-1 at 2. Thus, the Court cannot conclude Plaintiff failed to exhaust his administrative remedies with respect to Count XIII.

### ii.    Step Two of the Exhaustion Analysis

At the second step of the exhaustion analysis, the Court is not obliged to accept as true Plaintiff's assertions. Instead, the Court is required to "make findings on the disputed issues of fact." Turner, 541 F.3d 1082-83. See also Bryant, 530 F.3d at 1376 (holding district courts must act as factfinders when ruling on matters in abatement, such as exhaustion). Plaintiff contends administrative remedies were unavailable to him with respect to the following claims: Counts II, V, VII, VIII, and IX. Plaintiff contends his administrative remedies were unavailable because unknown prison officials must have destroyed his grievances after he or an officer placed them in a locked grievance box. Doc. 112 at 8 n.1; Doc. 112-1 at 4, 6-7; Doc. 135 at 6-7; Doc. 139 at 7-8; Doc. 139-1 at 2-3.

Upon review, the Court finds Plaintiff's assertions lack credibility. Notably, Plaintiff is a prolific litigant. See Doc. 17 at 51-57 (list of Plaintiff's federal lawsuits and appeals). He has demonstrated a sophisticated familiarity with the FDOC's grievance process, including how to access it and the steps needed to complete it. See Doc. 17 at 49; Doc. 135 at 6-10. Not only does Plaintiff demonstrate his familiarity with the grievance process, but Defendants offer evidence showing he accessed the grievance process numerous times between March 2018 and March 2020. Doc. 100-1; Doc. 100-2; Doc. 128-1.

Plaintiff's ability to access the grievance process undercuts his unsupported, self-serving assertions that his efforts were thwarted or intentionally sabotaged on certain dates. See Bryant, 530 F.3d at 1377-78 (holding the district court reasonably inferred the plaintiff's assertion that he was denied access to grievance forms was not credible because he had successfully filed at least one grievance at the prison). See also Whatley v. Smith, 898 F.3d 1072, 1083 (11th Cir. 2018) (holding the district court properly considered the plaintiff's grievance-filing history "as evidence that the defendants did not make administrative remedies unavailable to him or lose or destroy his grievances").

Moreover, in his amended complaint, Plaintiff asserts he "exhausted his administrative remedies when he filed formal grievances with the warden's office and with the Office of the Secretary of the [FDOC]." Doc. 17 at 49. While inmates are not required to specially plead exhaustion in their complaints, they are required to provide truthful information, and the Court-approved civil rights complaint form asks inmates to explain their exhaustion efforts. Id. at 49-50, 58. The form expressly prompts inmates to explain whether "the grievance process [was] completed" and, if not, to explain why. Id. at 49.

In completing his amended complaint, Plaintiff represented, with no exceptions or qualifications, that he completed the grievance process. Id. He wrote, "Plaintiff complained about the incidents sued upon . . . [as] set forth on pages 15-31." Pages 15-31 of Plaintiff's amended complaint contain all factual allegations supporting each of his fifteen counts. Notably, Plaintiff did not indicate the grievance process was unavailable to him at any stage or with respect to any claim. Id. at 49-50. In response to the questions asking about a failure to file a grievance, Plaintiff wrote, "not applicable." Id. at 50.

Of course, the Court-approved complaint form does not ask inmates whether prison officials destroyed grievances or failed to process properly submitted grievances. However, Plaintiff's demonstrated familiarity with the grievance process coupled with his affirmative statement that he exhausted all

16

claims raised in his amended complaint undercuts the position he now takes in response to Defendants' motions to dismiss that unnamed prison officials obstructed his access to the grievance process. Plaintiff provides no details about who may have destroyed his grievances or why. He also does not assert he took any steps to follow-up on grievances he purportedly submitted but to which he received no response or confirmation of receipt. His speculative assertions are self-serving and factually unsupported. Thus, the Court does not credit them.

For the above reasons, the Court finds Plaintiff's self-serving, conclusory assertions that the grievance process was unavailable to him fail to save the following claims from the mandatory exhaustion requirement: Counts II, V (as to Defendant Ford), VII, VIII, and IX. See, e.g., Bryant, 530 F.3d at 1377 (finding no clear error in the district court's conclusion that the plaintiff had access to grievance forms despite his assertion to the contrary). The Court will turn to Defendants' remaining arguments as to Counts I, III, IV, VI, X, XI, XII, XIII, XIV, and XV.

**B. Frivolity**

Defendants assert Plaintiff's amended complaint should be dismissed because his allegations are fanciful or delusional and because Plaintiff—according to Defendants—misrepresented his litigation history. Doc. 100 at 17-

17

21; Doc. 128 at 8-9; Doc. 129 at 8-9. The Court finds Defendants' arguments unpersuasive. While Defendants apparently deny Plaintiff's allegations of abuse by officers, such allegations, standing alone, cannot be defined as "delusional" or "fanciful." Whether Plaintiff ultimately can prove his claims is a question for the trier of fact or to be addressed on a more complete record at summary judgment, if appropriate.

As to Plaintiff's disclosure of his litigation history, the Court finds Plaintiff did not provide a false statement in his amended complaint. Plaintiff includes a list of cases and appeals he previously filed in federal court. Doc. 17 at 51-57. Defendants do not contend Plaintiff's list is incomplete. Instead, they suggest Plaintiff untruthfully implied he "never had an action dismissed under the three-strikes rule." Doc. 100 at 21; Doc. 128 at 8; Doc. 129 at 8.

The complaint form prompts inmates to answer the following question: "[H]ave you had a case dismissed based on [the] 'three strikes rule'?" Doc. 17 at 50. In response to this question, Plaintiff, instead of checking "yes" or "no," wrote, "Plaintiff never had <u>three</u> lawsuit[s] dismissed under the three strikes rule." <u>Id.</u> (emphasis added). This was an accurate statement when made. While Plaintiff did not overtly say he had at least one case dismissed for being frivolous, malicious, or for failing to state a claim, his explanation implies as much. <u>Id.</u> And, he included the cases that constitute strikes in the subsequent

18

section of the complaint form asking about his litigation history. Id. at 51-57. Accordingly, Defendants' motions are due to be denied as to frivolity.

### C. Improper Joinder

Defendants seek dismissal of Plaintiff's amended complaint because he joins multiple claims, which Defendants contend are unrelated. Doc. 100 at 16-17; Doc. 128 at 17-18; Doc. 129 at 23-24. Defendants do not specify which claims are subject to dismissal for being unrelated. However, to the extent some of the claims Defendants believe are unrelated are subject to dismissal for Plaintiff's failure to exhaust his administrative remedies (Counts II, V, VII, VIII, and IX), Defendants' requests that the Court dismiss those unrelated claims are moot. For instance, Defendant Danley's joinder argument is moot insofar as the sole claim against Defendant Danley (Count IX) is subject to dismissal on exhaustion grounds.

A plaintiff may set forth only related claims in one civil rights complaint. He may not join unrelated claims and various defendants unless the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences" and if "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). As recognized by the Eleventh Circuit, "a claim arises out of the same transaction or occurrence if there is a logical relationship between the claims." Constr. Aggregates, Ltd. v. Forest

19

<u>Commodities Corp.</u>, 147 F. 3d 1334, 1337 n.6 (11th Cir. 1998) (quotations and citation omitted).

Most of Plaintiff's separate claims arise out of incidents that occurred on different dates and involved different actors. However, Plaintiff alleges the separate incidents of excessive force—and the medical care associated with those incidents—are connected by a common thread: his lawsuit against Warden Reddish. Plaintiff makes such an allegation as to Counts I, III, IV, VI, X, XI, XII, XIII, and XV. Even if Plaintiff may have a difficult time proving multiple officers attacked him over the course of months because of a lawsuit he filed against Warden Reddish, Plaintiff's specific allegations are enough to demonstrate these claims arise "out of the same transaction, occurrence, or series of transactions or occurrences" and will involve common questions of law. Fed. R. Civ. P. 20(a)(2).

However, the Court finds Count XIV is not properly joined because it does not arise out of the same occurrence or series of occurrences as the other claims in Plaintiff's amended complaint. In Count XIV, Plaintiff alleges Defendant Watson threatened to physically harm him because Plaintiff filed a grievance against Defendant Hewitt-Watson. Doc. 17 at 31, 45. Plaintiff asserts no facts suggesting his retaliation claim against Defendant Watson is logically related to the other incidents. The only potential connection between

Count XIV and Plaintiff's other claims is that Defendant Hewitt-Watson was involved in the July 2, 2019 incident, which resulted in Plaintiff filing a grievance. Id. at 26, 29. However, Plaintiff does not allege the grievance Defendant Watson allegedly threatened him about was the one Plaintiff filed against Defendant Hewitt-Watson after the July 2, 2019 incident.

Even if the claim against Defendant Watson could conceivably be described as having a logical relationship to the excessive force claim against Defendant Hewitt-Watson, Plaintiff's claim against Defendant Watson fails for a more fundamental reason: Plaintiff fails to state a plausible claim against Defendant Watson. As such, the Court exercises its authority under the PLRA to dismiss this claim.

Plaintiff alleges Defendant Watson threatened him with physical harm on August 17, 2019, and again on October 17, 2019, in retaliation for filing a grievance against Defendant Hewitt-Watson. Id. at 31. Plaintiff alleges he "became afraid . . . . [and] suffered psychological injuries," but he does not allege Defendant Watson followed through on his threats. Id. at 45. Plaintiff fails to state a plausible First Amendment retaliation claim because he alleges no facts permitting the reasonable inference that he suffered an adverse action following Defendant Watson's alleged threats. See O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (setting forth the elements of a retaliation claim).

For the stated reasons, Plaintiff's claim against Defendant Watson (Count XIV) is due to be dismissed as improperly joined and for Plaintiff's failure to state a plausible claim for relief against Defendant Watson. See Fed. R. Civ. P. 20; 28 U.S.C. § 1915(e)(2)(B). The Officer Defendants' motion to dismiss is due to be granted in part to that extent. In all other respects, Defendants' requests that Plaintiff's claims be dismissed as improperly joined are due to be denied.

### D. Count XIII

Aside from their procedural arguments, the Medical Defendants seek dismissal of Plaintiff's Eighth Amendment claim (Count XIII) against Defendants Espino, Turbyfill, and Wilkerson on substantive grounds. The Medical Defendants assert Plaintiff's allegations do not permit the reasonable inference Defendants Espino, Turbyfill, or Wilkerson were deliberately indifferent to Plaintiff's serious medical needs on July 2, 2019. Doc. 129 at 21-22.

Plaintiff alleges Defendants Espino, Turbyfill, and Wilkerson failed to examine him, document his injuries, or provide adequate medical care. Doc. 17 at 44. Plaintiff explains he told these Defendants his head, shoulder, and back hurt, but Dr. Espino told him to "shut up" and only stapled a wound on his forehead. Id. at 29. He complains these Defendants ignored any other injuries

22

he may have had because they did not "lift up [his] shirts [and] pants legs." Id. at 30.

A claim for deliberate indifference to a serious illness or injury is cognizable under § 1983. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim, a plaintiff first must allege he had "an objectively serious medical need." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). "To qualify as a serious medical need, an injury or condition, if not treated, must create a substantial risk of serious harm." Hinson v. Bias, 927 F.3d 1103, 1122 (11th Cir. 2019) (quoting in part Taylor v. Hughes, 920 F.3d 729, 733 (11th Cir. 2019)).

Next, the plaintiff must "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010). Finally, the plaintiff must allege facts showing a causal connection between the defendant's conduct and his resulting injuries. Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009), overruled in part on other grounds by Hope v. Pelzer, 536 U.S. 730, 739 (2002) (identifying the elements of a deliberate indifference claim: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury").

23

"A prisoner bringing a deliberate-indifference claim has a steep hill to climb." Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1266 (11th Cir. 2020). For instance, to sufficiently plead the second element, a plaintiff must do more than allege the care provided was "subpar or different from what the inmate want[ed]." Id. at 1277. "[F]ederal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." Hamm v. DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985) (quoting Westlake v. Lucas, 537 F.2d 857, 860 n.5 (1st Cir. 1981)). See also Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003) ("[T]he Supreme Court established that 'deliberate indifference' entails more than mere negligence.").

Stated another way, "[d]eliberate indifference is not about 'inadvertence or error in good faith,' but rather about 'obduracy and wantonness'—a deliberate refusal to provide aid despite knowledge of a substantial risk of serious harm." Stone v. Hendry, 785 F. App'x 763, 769 (11th Cir. 2019) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). When a plaintiff has received some treatment, he pleads a deliberate indifference claim only by alleging facts showing the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)).

24

It appears Plaintiff only faults the Defendants Espino, Turbyfill, and Wilkerson for failing to identify additional injuries besides the laceration on his forehead for which he received treatment. He does not appear to take issue with Dr. Espino's treatment of his head laceration. Even if he did, however, it is clear Dr. Espino treated his serious medical need by stapling closed the laceration.

Aside from the laceration on his forehead, Plaintiff does not allege facts showing he had a serious medical need of which Defendants Espino, Turbyfill, and Wilkerson were aware. Rather, he complains he later "saw bruise marks" on his body that the Defendants Espino, Turbyfill, and Wilkerson failed to observe, document, or treat. First, a bruise is not something that, if left, untreated, would create a substantial risk of serious harm. See Hinson, 927 F.3d at 1122 (noting skin abrasions and a bruise do not constitute serious medical needs). See also Fernandez v. Metro Dade Police Dep't, 397 F. App'x 507, 512, 514 (11th Cir. 2010) (holding a temporary bloody nose, bruising, pain, and disorientation were not serious medical needs). Second, "the failure to alleviate a significant risk that an official should have perceived but did not, while no cause for commendation, cannot be condemned as the infliction of punishment." Farmer v. Brennan, 511 U.S. 825, 826 (1994).

25

Even if Defendants Espino, Turbyfill, and Wilkerson were obligated, through prison policy, to check every inch of Plaintiff's body during their post-use-of-force examination, but they did not, their conduct would amount to negligence, at the most. Plaintiff alleges no facts permitting the reasonable inference the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." See Harris, 941 F.2d at 1505.

Accordingly, the Medical Defendants' motion is due to be granted insofar as Plaintiff fails to state a plausible claim for relief against Defendants Espino, Turbyfill, and Wilkerson in Count XIII.

## IV. Plaintiff's Motion for Default Judgment

On May 18, 2021, the Clerk entered a default against Defendant D. Robinson, because Defendant Robinson was served with, but failed to respond to, the amended complaint. See Clerk's Default (Doc. 106). Plaintiff now seeks entry of a default judgment against Defendant Robinson under Rule 55 of the Federal Rules of Civil Procedure. Doc. 113 at 1. In a supporting affidavit (Doc. 113-1), Plaintiff avers Defendant Robinson is not in the military. Doc. 113-1 ¶ 3.

Rule 55 establishes a two-step process for obtaining a default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk

26

of court is authorized to enter a clerk's default against the defendant. Fed. R. Civ. P. 55(a). Second, after entry of a clerk's default, the plaintiff must apply to the court for a default judgment, except in limited circumstances when application may be made to the clerk. Fed. R. Civ. P. 55(b).

Importantly, "a defendant's default does not in itself warrant the court in entering a default judgment." Nishimatsu Const. Co. v. Houston Nat. Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).[5] There is a strong policy that cases should be decided on their merits; thus, default judgments are disfavored. Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015). In the spirit of deciding cases on their merits, a defaulted party "is not held to admit facts that are not well-pleaded." Id. Accordingly, a court's analysis of whether a plaintiff is entitled to entry of a default judgment conceptually is similar to a motion to dismiss. Id. ("[A] motion for default judgment is like a reverse motion to dismiss for failure to state a claim.").

Plaintiff alleges Defendant Robinson ignored his request to declare a medical emergency, telling him, "I don't care." Doc. 17 at 18-19, 37. He asserts no other factual allegations against Defendant Robinson. Accepting as true

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all the decisions of the former United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981.

that Defendant Robinson ignored Plaintiff's attempt to declare a medical emergency, Plaintiff does not allege he suffered any adverse consequences because of that conduct. For instance, he does not say, aside from in a conclusory manner, that he was forced needlessly to endure pain or sustained an injury as a result. Id. at 37-38. Thus, even assuming Plaintiff had a serious medical need and Defendant Robinson ignored that need, Plaintiff does not allege an important element of a deliberate indifference claim: causation. See Mann, 588 F.3d at 1306-07 (identifying the elements of a deliberate indifference claim).

Because Plaintiff fails to state a plausible claim for relief against Defendant Robinson, his motion for default judgment is due to be denied, and his claim against Defendant Robinson (in Count V) is due to be dismissed under the PLRA. See 28 U.S.C. § 1915(e)(2)(B).

Accordingly, it is now

**ORDERED**:

1.      Defendants Atteberry, Chambers, Chandronnet, Dean, Douglas, Hall, Halsey, Handley, Hanson, Honour, McClellan, Mitchell, Reddish, Warren, and Watson's motion to dismiss (Doc. 100) is **GRANTED in part and DENIED in part**. The motion is **granted** to the extent the following claims are subject to dismissal for the reasons stated in this Order: Count II against

Defendants Warden Reddish and Assistant Warden McClellan; Count VII against Defendant Warden Reddish; Count VIII against Defendants Warden Reddish, Chandronnet, and Honour; Count IX against Defendants Atteberry and Kelly; and Count XIV against Defendant Watson.

2.     Defendant Danley's motion to dismiss (Doc. 128) is **GRANTED** to the extent Plaintiff's claim against Defendant Danley in Count IX is dismissed for Plaintiff's failure to exhaust his administrative remedies.

3.     Defendants Espino, Ford, Turbyfill, and Wilkerson's motion to dismiss (Doc. 129) is **GRANTED** to the extent that Plaintiff's deliberate indifference claim against Defendant Ford in Count V is dismissed for Plaintiff's failure to exhaust his administrative remedies, and Plaintiff's deliberate indifference claim against Defendants Espino, Turbyfill, and Wilkerson in Count VIII is dismissed for Plaintiff's failure to state a plausible claim for relief.

4.     Plaintiff's motion for entry of a default judgment against Defendant Robinson (Doc. 113) is **DENIED**.

5.     Plaintiff's claim against Defendant Robinson is dismissed without prejudice for Plaintiff's failure to state a plausible claim for relief. See 28 U.S.C. § 1915(e)(2)(B).

29

6.     The **Clerk** is directed to **terminate** the following Defendants as parties to this action: McClellan; Ford; Robinson; Danley; Kelly; Watson; Espino; Turbyfill; and Wilkerson.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of March 2022.

_____

BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Corey L. Milledge
Counsel of Record

30